Good morning, Your Honors. May it please the Court? Hold on one second, Mr. Sitt. Okay, please proceed. Thank you, Your Honors. May it please the Court? I represent Plaintiff Appellant R.L. Vallee, Inc. This appeal concerns Vallee's challenge under NEPA and the APA to a documented categorical exclusion, or ECE, that the Federal Highway Administration approved for a large highway redesign project in Colchester, Vermont, proposed by the Vermont Agency of Transportation, or VTRANS. Excuse me, Counsel, could you get a little closer to your microphone? It's a little quiet for me. Sorry, Your Honor, we were trying to work that out earlier. Okay, I'm holding the mic as close as I can now. That's very good. Sorry about that. A timeline of relevant events appears in Vallee's reply brief at pages 1 and 2, briefly summed up in December 2013. Uh-oh, frozen. You're frozen. You're frozen. Now you're not. Okay, keep going. The parties cross-moved for summary judgment between August and October of 2019, and the District Court held a motions hearing on March 11, 2020, during which Vallee asked the Court to stay the case pending re-evaluation of the DCE that's required by federal regulation. During that March hearing, the District Judge indicated his willingness to wait a couple of months for the re-evaluation to come in and for Vallee to file an amended pleading, thereby avoiding what the District Judge characterized at the time as, quote, the gloomy prospect of doing this case two times. Now, unbeknownst to Vallee and the Court at the time, on April 6, 2020, less than a month after that March 11 hearing, V-Trans submitted re-evaluation documentation to the Highway Administration, and the Highway Administration approved the re-evaluation on April 17. It took two and a half months, Your Honors, until July 1, 2020, until the Highway Administration informed the Court and Vallee via submission that the re-evaluation had been completed back in April. And four business days later, on July 8, the District Court ruled for defendants and noted in its ruling that the April 2020 re-evaluation was not before the Court. Vallee's first argument for reversal is that the Federal Highway Administration's 2013 approval of the DCE, which constituted final agency action at the time, ceased to be final agency action in April 2020 when the Highway Administration reopened its 2013 decision. Counsel? Yes, Your Honor. Let me cut to this case. Isn't what's going on in this case that you and all the people with you are really objecting to Costco? And that that's an issue that was decided before? And that this is just a way of trying to reopen the fact that before any of this was done, Costco was given a chance to build that service station. And that everything else is really an attempt to re-litigate the question, which I may be sympathetic to you, but which was decided that it was okay for Costco to build there. Thank you for that question, Your Honor. And respectfully, no, I don't believe that's the case at all. This project would have massive implications for Vallee's business, independent of Costco. A portion of Vallee's land is being condemned to build it, along with 29 other businesses in the area. The construction is going to be extremely disruptive and environmentally harmful to Vallee's property and business. There's a brook that runs through Vallee's property that is already impaired, and the project is going to cause further impairment to that brook. Costco is just one small piece of this, Your Honor. Well, given the fact that the 2014 regs have now been in place and there's been an agency action on that, what's the point of our deciding this case when the 2014 case could upend everything we decide? The case, the later case. In other words- I'm not sure. Why did the district judge not permit the amendment, which would then encapsulate both cases at the same time, and then there could be an adjudication that would be determinative of the whole thing? Thank you, Your Honor. That's precisely our point. We're talking about this case, but this has massive implications for every other NEPA case as well, where there's a reevaluation. What the government is arguing for is two trial court litigations and two appeals. Vallee is trying to streamline the process with a single trial court proceeding and a single appeal. As I read the new regulations, they both narrow the restrictions and expand them, and so it would be a slightly different case. It's not absolutely certain that whatever the district court did on the first case, you would do on the second, or that we would agree. I wholeheartedly agree, Your Honor. I don't believe there's any vested rights underneath us, and so the reevaluation that took place in April 2020 would be under the new regulations. But are we going to set up a rule which suggests that every time there is a relook at something, everything that is done before gets thrown out, even if the relook, the reevaluation simply reaffirms what was done before? I mean, that would be just administratively madness, wouldn't it? Your Honor, what the judge said in the R.B. Highlight case, which we think has many helpful parallels to this case, is in that particular case there was a statute of limitations issue. Now, there's no statute of limitations issue here, but the judge in that case said that the failure to challenge the project back more than six years ago during the original DCE analysis was time barred, but that the reevaluation constituted a reopening, and there's extensive case law cited in there, and there's a recent Second Circuit case as well that we cite in our brief that basically says that when there is a reevaluation, that it does reopen prior issues that are not barred by the statute of limitations. My question is very different. My question is even assuming that it doesn't reopen and even assuming that it was a final order, there's a practical problem. It's going to be relitigated again, and whatever we decide on the first evaluation could change. That's all. It might not. We'll have our views as to whether that could happen or not, but it just administratively seems weird to have one case decided, have a reevaluation which is permitted, which under new regulations, and then just ignore that. Well, we have to ignore it unless it's part of the case, but my own question is why shouldn't they be considered together? That's all. And, Your Honor, that's precisely our point. At the point that the government or the Federal Highway Administration reopened and reevaluated the 2013 DCE, the 2013 DCE ceased to constitute final agency action. Whether it did or not, in any event, there's going to be a second chapter to this case, no matter what. Whether the first decision is a final one or not a final one, there's going to be another decision and presumably an appeal. Am I correct? It's entirely possible, and that's why we think that the best course here is a rematch. But if we decide some things and affirm some things, don't they become then either collateral estoppel or res judicata or law of the case so that some things would not need to be re-argued in a second case? I think Judge Walker is absolutely right that if there is a second holding, that second holding can then be appealed and challenged. But once the case, and maybe it wouldn't have made any sense for it to get to us before, but now that the district court has judged and the case is before us, if we decide some things, those then at least get settled in the second case. All right. Well, in that case, in that scenario, we think that for precedent purposes, the better practice here we respectfully submit would be a remand so that the whole thing can come up on a single appeal on the merits. But if we can talk about the merits, the highway administration approved the DCE under two sections of 23 CFR 771117 D1 and D2. And as explained in our briefs, we don't think that this DDI project qualifies for DCE under either of those provisions. And here again, the RBI, excuse me, the RBI case is highly instructive. The same two provisions of the CFR were relied on by the highway administration in that project. And District Judge Byron rejected both on the subject of D2. Okay. And here we come back to the previous thing, that is you would like us to rule in your favor that the decisions which were made were incorrect because this was not just a modernization but was much more of that. And if we decide that, that presumably will affect what would happen in the second case. If we decide against you on that, that also will affect the second case. But you are now arguing what the case is about, aren't you? Well, it's an in the alternative argument, Your Honor. Our first argument is and has always been that this should be remanded. I understand. But now you are arguing that certain things which were done were improper. And you want us to hold that. If this court chooses to reach the merits of the district court's decision that the 2013 DCE was not arbitrary and capricious, then Your Honor is correct. It's our position that it was arbitrary and capricious. Well, apart from that, my concern is that the reg has changed in a material way between 2013, which is this case, and 2014. So the law, the standards for granting the DCE or the CE are different. Would you agree with that? I would, Your Honor, and I think that also militates in favor of a That, at least in my mind, raises a question about whether there could be any kind of res judicata or collateral estoppel based upon the prior case, if, in fact, the standards have been altered in the interim. I wholeheartedly agree, Your Honor. And, again, I think that that militates in favor of a remand so that the district court could sort this out and come up with a single appeal. Obviously, what is collateral estoppel or res judicata depends on whether the law has changed. If there are some things which under the changed law are still the same, then you have collateral estoppel. If there are things that are different, then you don't. But that depends on what is the same and what is different. Let me ask you some questions, Mr. Steff, about the merits and about 117D. If the applicant believes it's possible that significant environmental effects will result, would that be dispositive? I think so, Your Honor. I mean, the standard is that there should be no significant environmental effects, and they did not certify. That is, the V-Trans, the Vermont State Agency of Transportation, did not certify that there would not be significant environmental impacts, but merely that they didn't think they would result. And what if the agency looks at the whole application and the supporting documents, and it decides that the applicant is wrong and that there is no possibility that significant environmental effects would result? Can it issue or not issue? Is it not able to issue a categorical exclusion then? Is Your Honor asking that if the federal agency of highway administration determines that the state agency is incorrect and the federal agency concludes that there's no environmental impact? Yes. I don't believe that that happened here. No, I understand that. Okay. Is it not able to issue a CE in that instance? My understanding of the record, Your Honor, is that the applicant for the DCE, in this case the V-Trans, needed to certify in its application that there would be no significant environmental impacts, and they did not do that. So whether the federal agency could override that. Correct me if I'm wrong, but didn't they certify or in effect state that there were likely to be no environmental impacts? They're not likely to be any environmental impacts. I believe the verbiage was not likely. Or that they're not expected, as opposed to definitively saying will not occur. That's right. You don't think that's enough? I don't. I don't. I mean, the reg's pretty clear. I don't understand how the state agency gets to hedge on what the reg requires and say, well, the reg says we have to certify that there won't be any impacts, and we're going to say we don't think it's likely. I mean, that kind of eviscerates the reg. I think my question was the flip of that, right? If the agency, the applicant, believes it is possible that there's a significant environmental effect that will result, would you say that that's dispositive? Or is it something with which the agency, the federal agency, after looking at the whole application and the various supporting documents and so on, can say, you know what? We actually think that it is not possible that significant environmental effects would result. Is it in that case not able to issue an exclusion? I haven't encountered a case. It's an excellent question. I haven't encountered a case where the federal agency essentially overruled the state agency and found a more emphatic finding of no significant impacts, and that certainly wasn't the case here. No, I understand that, but do you have a view? What is the understanding that you've never seen a case like that? Could the agency in that situation issue an exclusion, or would it not be able to because of the state agency's preliminary view? My understanding of this process, Your Honor, is that the state agency is the one that takes the deep look at it initially and then represents to the federal agency, or is supposed to represent, that there are no significant environmental impacts that are going to occur, and that the federal agency simply either approves that or rejects that. And sort of the proof of that in this case is if you look at the approval of the DCE, it's like a single sentence. There's no detailed analysis at all. So I'm not aware that the federal agency goes in, rolls up its sleeve, and performs that level of analysis. But I would say, for the purposes of your question, that if the state agency is not prepared to represent that no impacts will occur, that that should be disposed of. Let me just focus on the travel patterns issue. Here, as I understand the federal agency, they believe the travel patterns consist of the number of drivers going from one particular place to another particular place by taking a particular route. Is that right? I mean, the federal position, the federal government's position is that it's basically within the footprint of the existing road, but no one can dispute, I don't believe anybody can dispute, that more cars are going to be traveling through that footprint if this project was built. But as I also understand it, Mr. Seth, obviously you disagree, but generally we defer to an agency's interpretation of its own regulations. And why shouldn't we defer here to the federal highway agency's interpretation about travel patterns? Thank you for that question. I appreciate the opportunity to respond. If you review the R.B. Hialeah case, in that case the federal government also relied on 771, 117, D1, and D2. And the analysis in that case appears at pages 1319 to 1322, and I submit respectfully it applies with equal force in this case. Judge Byron analyzed six cases cited by the highway administration in which section 117, D1, DCEs were approved. That's Hassell, Aquifer Gardens, Florida Keys, Hell's Canyon, Ware, and Public Interest Research. Is there a circuit case, a circuit decision that embraces this analysis and then endorses that analysis? Thank you, Your Honor. The closest circuit case to this case is the West case from the Ninth Circuit. And in West, the Ninth Circuit held emphatically that if you're building a project that causes an increase in traffic and changes travel patterns, ipso facto it does not qualify for coverage. My problem with that language is it is so vague that I have no idea what is simply modernization and what changes traffic patterns. I have no idea what is on one side of the line and on the other. I suppose there could be some things which are so dramatic that I can do it. But most any change in a highway is going to affect traffic and most any is going to be modernization. So what can I do other than rely within very broad ranges on what the administrative agency is, how much I may not like and I don't much like administrative agencies. But what can I do in a case like this? Thank you, Your Honor. I would submit respectfully that one thing that this court and Your Honor should consider doing is exactly what the district judge did in the R.B. Highlight case. And it's at pages 13, 21 to 22 of the decision. The court said that if the project increases traffic capacity, it is beyond the scope of section 771117B. It just means that any single change in any single thing on any single road becomes something that is subject to this. And that's impossible. That's not what it could possibly mean. You know, fine, the district judge in Florida feels that way. He's in Florida. Let him live there. But I just don't see how we can – I don't see how that can make any sense. I understand what you're saying, that there are things which are meant to be too broad, and maybe this is. But I don't know how I as a judge am in any position to do – to make that line. Your Honor, six district court cases were analyzed in Judge Byron's decision in the Highlight case. And in each of those cases, what was being done was an attempt to repair a road or improve safety. They were not meant to do what's going on here in this case, which is to expand capacity dramatically. They're trying to expand capacity in this case, Your Honor, for more cars that they predict will be coming through in 2028. Ten years more of additional traffic. We just have to look at the news, Your Honor. Look at what's happening around the country with forest fires, flooding, tornadoes, hurricanes. All we're asking here is that this be sent back so that the agency can do an environmental impact statement so we can see how this project is going to impact the environment. This is a massive project for Vermont. This is not Seattle, where the West Bay is concerned, or Orlando that was being considered in the R.B. Highlight case. Let me go back briefly, and then we'll hear from the government, to the Costco development or the Costco project. Am I right that the federal agency considered that development anyway in making its final assessment? Your Honor is correct. There's a series of email messages back and forth that are in the appendix cited in our brief where the federal agency and the state agency were conferring about how to treat the Costco project. And basically, and it's our position, that the federal agency essentially instructed the state agency to treat it as if it was not an indirect impact. And we submit respectfully that that is incorrect. It was considered, but it was not considered as an indirect impact. All right. We'll hear from Mr. Gray. You've reserved two minutes for rebuttal, Mr. Seff. Thank you, Your Honor. Mr. Gray. Good morning. May it please the Court, Michael Gray, on behalf of the Federal Highway Administration. I have a lot to address and get to, so I think I'll start with the beginning and explain why this is final agency action and why the 2020 re-evaluation should not impact at all the court's path here. The court should go ahead and decide the case. In fact, it would be more efficient to do so. I think part of the misunderstanding here is that the 2020 re-evaluation is not an entirely new decision. The way the regulations are set up is after three years or if there are some design changes to a project, the agency can go back and examine whether its previous decision, the 2013 decision here, remains valid or requires further analysis. So the 2020 re-evaluation, all it says is that that previous decision remained valid. So if there were a subsequent challenge to that standard, it would be different. If we take the 2013 decision, the decision on the merit theory, then the standard of review of the 2020 decision would be, did the agency correctly conclude that the 2013 decision remained valid and that there was no reason to do more environmental analysis here? But what about the fact that the rules have changed? Yes, I think it does not make a difference in this particular case because the 2020 re-evaluation again was examining whether that previous decision remained valid and the change in the regulations here has no substantive difference for these particular ones. The regulations, these two categorical exclusions were moved into a different section and the way these highway regulations were categorical exclusions. But let me ask you. Suppose now somebody brings a new case and says that application of the new rules to that was incorrect. That is not an issue that is before us now, is it? That's correct. So we would then have to decide in a separate case if that decision that the new rules didn't change anything. That's a separate question from anything we are called on to decide today, isn't it? That would be a separate question. Let me just ask you one question about the re-evaluation. Are you saying that the re-evaluation is pursuant to the 2000 and they'll just ignore the 2014 changes and they'll look at only the 2013 and how can that make sense? No, I think the re-evaluation would have to examine whether there was a regulatory change that would change anything with the application of the categorical exclusion. But here, as I was going to explain, because there were some questions about that on the other side, there's no material change in the way the regulations apply. But it is a separate question. But basically what you were arguing is that whether the agency was correct in saying that the new changes, that the changes in regulation make a difference or not, doesn't keep us from saying today what the original decision was. That happens. But the fact that it may be from a standpoint of judicial efficiency, the two cases should have been brought together. But once they haven't, we have before us the original decision and whether that made sense. Because nothing got changed. If a new decision changed the old one, then the old one wouldn't be there and we'd have nothing to decide. But we do have that and that's what we have to decide today. Then another court will say, were they right in saying that there were no changes? Is that your position? That is correct. You've accurately stated our position. And I do want to just address briefly this idea that it would be more efficient because I think it would not at this point be more efficient to send the case back. And what they're asking for is vacate a decision that's already been decided on the merits, fully briefed and now argued on appeal and send it back to redo it when nothing has changed with respect to that decision. So it's not more efficient. And, in fact, there's no basis on which the court can do that. There was no Rule 15 motion filed in the district court. There was no motion under Rule 59 or 60 for relief from the judgment to seek leave to amend. And this court has said that. Well, there wasn't a motion filed because my understanding is that the government sat on the decision for two months, and it could have immediately, once the agency had decided the case, explained what had happened. And then it would have been two months before the next scheduled hearing. Well, I mean, there was, I think, a miscommunication or a failure of communication between agencies and justice that resulted in that delay. But that could have been the basis to form a Rule 60 motion or a Rule 59 motion to say, wait, you should reopen this judgment and allow us leave to amend to decide it. But they didn't file that. And the court had no obligation to do it, especially when there was no change in the underlying decision. And that reevaluation doesn't change anything about merit. It doesn't change the decision that the CE is the appropriate outcome. It doesn't agree. But it did so under different regulations that could be challenged differently. You say that they're not material. I don't know whether the other side agrees. I don't think they're material. But I think that's an issue that would be decided in the next lawsuit. Yeah, it would. You'd have two lawsuits. You'd have two, two, two lawsuits. You'd have two. We'd be busy writing two opinions. But the alternative here is to send it back and redo what's already been done. You're having three lawsuits instead of two. Mr. Gray, this is just Loehr. Would you just maybe help me understand this reevaluation process? With more precision, how exactly does the agency treat the earlier decision during the reevaluation process? Well, it looks at the decision. In reevaluations, I should back up a little bit because reevaluations apply both to environmental impact statements or to environmental assessments or to categorical exclusions. So you could have a reevaluation. And these highway projects are typically long-term projects that take a long time to play out. Often there's no action for long periods of time. And so what the regulation does is says after three years have gone by with no action, major action, before you do anything, we have to make sure that there's been no change. And that's true whether it's a categorical exclusion or an environmental impact statement. And so the agency looks at whatever documentation performed under NEPA in the reevaluation and says, okay, has anything materially changed to suggest significant impacts we haven't considered? In most of these cases, what is going on is at the reevaluation, you look at whether this has greater traffic impact or is something of that sort, and you decide no, so the original decision stands, or you decide yes and make a new one. What makes this case potentially different is that in the interim there were some new regulations. And you then held the new regulations made no difference, and that makes this different from the ordinary reevaluation case. Am I right? I think it adds a wrinkle to it, yes. And as we've discussed at length, that's an issue that would be in the next suit should they want to bring one. But before the wrinkle, let me just further understand the reevaluation process. So does the agency assume that its earlier decision was valid at the time it was made? Is there something that I could latch on to to say, oh, that's the working assumption in the context of a reevaluation? I don't think that that's necessarily the working assumption. I think the agency is required to look and see has anything changed. I think if nothing has changed, then, yeah, that's going to be the assumption. So does it focus only on the changes since the decision and determine whether that changes the result? Is that what you're saying? Yeah, that's exactly right. It would focus on the changes. I mean, there's a time limit also because the background environmental situation could also change. So you would look both at changes to the projects, whether there have been any changes in the affected environment. Let's go back to the precise question the presiding judge asked. Do you take the decision as being correct on the basis of the time that it was made and look to whether the changes, whether changes in pattern, changes in environment, changes in bananas, make that different? Or do you at that point also re-question whether what you originally did was correct? I see. No, you do not re-question whether what you originally did was correct. That remains. That's extremely important to me because if you re-question that, then how can one say that that is final? Right. No, you do not re-question that. Then it becomes a matter of what in terms of judicial efficiency is the best way of handling it. But it's a matter of whether something was final or not. That is crucial. So you are telling me that that is the way this goes. Right. You do not re-open and re-look at from the beginning. You accept that your original decision was correct and you look to see whether there are any changed circumstances that would call into question whether you need further environmental impact. That would make something. And then you have a different situation depending on whether there are changes or not. What makes this case interesting is that the changes are new law, which obviously raises a question of law about whether you decided that correctly or not. Yeah, but that still doesn't affect the initial decision at all, which remained final. Even more, if it's a change in law, it obviously can't affect whether the right decision was correctly made under an existing law. Exactly. Exactly. So this is not the equivalent from the agency's perspective of de novo review. No, the agency is not taking a de novo review of its previous action. That's right. It's asking whether there are changed circumstances. Typically, this is in an environmental impact statement. You might prepare a supplemental environmental impact statement to examine changed circumstances either in the environment or in the proposed action. And you see that across agencies. Highways is a little bit different in that it has codified this reevaluation process and the regulations, but you can see it in the Forest Service. You can do a project where they're cutting timber, and then something changes, and they have to go back and look and see whether their analysis is correct. Can you help me with something else? And that is, this thing that you are applying seems to me to be unspeakably vague, the difference between what is traffic patterns and what is simply modernization. Has the agency come up with anything that allows us to ask whether you are acting consistently? So, yeah, let's focus on the language of the categorical exclusion for modernization and then focus in the record on the language for the work involved in the project. And I think if you do that, you can see that actually it fits quite nicely. You know, the modernization of the highways is modernization by resurfacing, restoration, rehabilitation, reconstruction, adding shoulders, or adding auxiliary lanes. If you look at the work for this project, which is described in Joint Appendix 548, it's described as the construction of the diverging diamond interchange, which involves widening for new turn lanes, resurfacing, new signals, new lighting, new signage. And so those widening and new turn lanes all look entirely within the existing footprint, fit very neatly within resurfacing and reconstruction and adding lanes, including turning lanes, specifically mentioned in the regulation. So I think when you look at the actual language of the regulation and you look at the actual work described here, they fit together quite nicely. It's clear why the agency thought this applied. And again, this project is one that involves less than two acres of narrow strip takings, less than one acre of new impervious surfaces. So why did you need to obtain the federal agency's approval for the interchange project? I believe it's a funding issue. The highways, when they fund these and approve them, there's some approval required there. You know, I'm not entirely sure the full basis for that. There's no question about that. The highways has to do this. But it's such a small project. It fits very neatly within that. And also, you know, this idea of traffic patterns and increased growth, I mean, there's no question this is going to increase the capacity of the area. But if you look at the purpose and need statement, the very first purpose is increased safety, reduced congestion, increased bike and pedestrian safety because we'll have new bike lanes and new sidewalks here, increased traffic flow. These are really the nature of the project. You know, it's not intended to and is not likely to induce growth, which the standard for something more would be. So I think these fit really well within these categorical exclusions. And it's not like the West case where you have, you know, an entirely new intersection that's driving traffic to a new area with a new plant. Here, it's the same footprint, the same basic footprint with no new travel lanes, no new direction. So you're advising us that that's a way to distinguish West and we don't have to disagree openly with West. Yes, I don't think there's no need to disagree with West. West involved an entirely new interchange that was much larger. Whereas here, there's an existing interchange that's going to be made more efficient. And that's a big difference. And I think that that's a big difference in what constitutes what change in travel patterns and what doesn't, because there's no. Thank you. We're not driving traffic to a new area. Thank you very much. Mr. Seth. Thank you, Your Honor. Very briefly, the re-evaluation application was submitted by V-Trans and Federal Highway Administration on April 6th, not even a month after that hearing. And at page 421 of the joint appendix, there's a bullet-pointed list of all the changes that were made in the project since the original DCE. So you have more than it looks like about a dozen or so changes there. In addition, as the district court observed at page 9 of its decision, which is page 17 of the joint appendix, the regulations have changed. So not only has the project changed, but the regulations have changed. So this is yet two more reasons why we think, from a judicial economy standpoint, this should all be heard in a single case. As far as the timeline goes, the submission of the re-evaluation to the district court came in on July 1st, right before the July 4th holiday weekend. The district court's 20-plus page decision came down on July 8th, right after the July 4th three-day holiday weekend. In that time, my law firm colleague, Mr. LaRosa, drafted a motion to amend the complaint and submitted it to the principal of RL Valley for approval. And he was waiting for his client's approval when the decision came down. So we tried to do everything we could to bring this in front of the district judge and not have it go up on appeal like this. But when the decision came in and it said, the 2020 re-evaluation, this is the last sentence of the decision, the 2020 re-evaluation is not before the court. It was clear to us that the district court was not interested in hearing that in the same case, was going to let Valley go up on appeal here and have a new lawsuit filed on the re-eval. But what is wrong with that? Suppose there's a criminal who is convicted under a particular crime and sentenced to something and is appealing that. And then subsequently you get the First Chance Act passed, which makes sentences and other things quite different. Does that mean that we have to decide both when we're hearing the first appeal, what might happen with the First Chance Act if that hadn't been argued? That happens all the time that the law changes and somebody has a new right. I mean, it may be convenient to do it together, but does it mean that we have to? In this particular case, Your Honor, we submit respectfully that it does because the district court, there was a defect in statutory standing at the point that the re-evaluation came in. The 2013 DCE no longer constituted final agency action. Another reason, a practical reason to have this all heard in one case is that there are many litigants in the NEPA arena who simply cannot afford to bring two lawsuits and two appeals. I'm not saying that's what happened in this case, but there should not be an invitation to potential mischief where a recalcitrant federal agency is trying to basically wear out its adversary by making them bring two lawsuits and two appeals. This should really be all considered one time by the trial court and one time by this court. And that frees Your Honor up to hear other cases. Thank you very much. We've got the benefit of your arguments. We'll reserve decision.